NOT DESIGNATED FOR PUBLICATION

No. 128,920

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHRISTOPHER BRYANT ESCOBAR,
*Appellant*.

MEMORANDUM OPINION

Appeal from Doniphan District Court; JOHN L. WEINGART, judge. Submitted without oral argument. Opinion filed July 31, 2026. Sentence vacated in part and case remanded with directions.

*Andrew J. McGowan*, of Kansas Appellate Defender Office, for appellant.

*Charles D. Baskins*, county attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before ARNOLD-BURGER, P.J., MALONE and PICKERING, JJ.

MALONE, J.: Christopher Bryant Escobar appeals his sentence following his no contest plea to one count of aggravated indecent solicitation of a child. The district court sentenced Escobar to 108 months' imprisonment followed by lifetime postrelease supervision. Escobar raises two related issues centering on the imposition of lifetime postrelease supervision as part of his sentence. First, Escobar claims the district court violated his rights under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), by engaging in judicial fact-finding to extend the length of his postrelease supervision. Second, Escobar claims his lifetime postrelease supervision term is an illegal sentence. After thoroughly reviewing the record and for the reasons

1

explained below, we vacate the lifetime postrelease supervision term of Escobar's sentence and remand the case with directions for the district court to impose a lawful term.

FACTS

On April 4, 2023, the State charged Escobar with two counts of aggravated indecent liberties with a child, each count being a severity level 3 person felony. The caption of the complaint, below Escobar's name, stated his year of birth as 1989. The language in the body of the complaint alleged that the victims were under 14 years of age, but the complaint did not allege that Escobar was 18 or older when the offenses were committed. The complaint was later amended to specify the charges were off-grid felonies, but there were no other substantive changes.

The district court held a preliminary hearing in September 2023, and Escobar was bound over for trial on the charges. At the arraignment hearing in February 2024, Escobar told the district court he was born in 1989. At that hearing, the district court informed Escobar that one of the potential penalties for aggravated indecent liberties with a child was lifetime postrelease supervision, and Escobar confirmed that he understood.

The parties mediated the case and reached a plea agreement under which Escobar would plead no contest to an amended charge of aggravated indecent solicitation of a child in exchange for the State's dismissal of the original charges. The State also agreed to recommend a durational departure from a 130-month standard presumptive sentence to a 108-month sentence. The agreement was silent on any postrelease supervision term.

At the plea hearing on May 3, 2024, the parties orally presented the plea agreement to the district court—the record contains no written acknowledgment of rights or plea agreement. The district court addressed Escobar, informing him of the rights he

2

would be waiving by pleading no contest, including his constitutional right to a trial by jury. The district court also advised Escobar that his sentence would depend on his criminal history and could range from 38 months to 136 months in prison and "[y]our postrelease supervision would be 36 months." The State then set forth the factual basis for the plea—the prosecutor did not mention Escobar's age as part of the factual basis. The district court accepted Escobar's no contest plea and found him guilty of aggravated indecent solicitation of a child. At no point during the plea hearing was Escobar's age during the commission of the crime mentioned. Near the end of the plea hearing, the court service officer informed the district court that Escobar's "registration period" would be "life," and Escobar's attorney stated, "That's what we thought, your Honor."

The presentence investigation report listed Escobar's age as 33. At the sentencing hearing on May 30, 2024, the district court granted Escobar's motion for a downward durational departure and sentenced him to 108 months' imprisonment. Without any discussion by the parties or the judge, the district court ordered that Escobar "would be subject to a lifetime of postrelease supervision." Escobar timely appealed his sentence.

ANALYSIS

Escobar claims the district court violated the rule in *Apprendi*, 530 U.S. at 490, by increasing his sentence to lifetime postrelease supervision by engaging in judicial fact-finding to conclude he was at least 18 years old when he committed his crime without him knowingly and voluntarily waiving his right to have a jury make that finding. An *Apprendi* challenge to the length of postrelease supervision involves a question of law, subject to unlimited review. *State v. Anthony*, 273 Kan. 726, 727, 45 P.3d 852 (2002).

The State argues this court should not address Escobar's claim for two reasons. First, the State asserts this court lacks appellate jurisdiction to review Escobar's sentence under K.S.A. 21-6820(c)(2) because Escobar received a plea negotiated sentence.

3

Second, the State asserts this court need not address Escobar's claim because he is making it for the first time on appeal and the issue is unpreserved. Alternatively, the State suggests that even if this court reaches Escobar's argument, it should find that Escobar's waiver of his right to a jury trial was sufficient or that any error was harmless.

We will first address the State's jurisdictional challenge. The State argues that the plea agreement Escobar entered into deprives this court of jurisdiction because K.S.A. 21-6820(c)(2) does not allow an appellate court to review a sentence resulting from an agreement between the parties that the sentencing court approved on the record. But the record does not show there was any agreement on the term of postrelease supervision as part of the plea agreement. Because the plea agreement did not discuss the postrelease supervision portion of Escobar's sentence, K.S.A. 21-6820(c)(2) does not apply.

*Should we address Escobar's claim for the first time on appeal?*

As for preservation, Escobar acknowledges that he is bringing his claim of judicial fact-finding for the first time on appeal. Generally, an appellate court will not consider issues raised for the first time on appeal. *State v. Allen*, 314 Kan. 280, 283, 497 P.3d 566 (2021). He asks this court to address his claims because (1) the claims present a purely legal question arising on undisputed facts that are finally determinative of the case, or (2) it is necessary to review the claims to prevent a denial of fundamental rights. See *State v. Gonzalez*, 311 Kan. 281, 295, 460 P.3d 348 (2020). An appellate court's decision to review an unpreserved claim under an exception is prudential; even if an exception applies, the appellate court is not obligated to review the claim. *State v. Rhoiney*, 314 Kan. 497, 500, 501 P.3d 368 (2021). We agree with Escobar that the preservation exceptions he is asserting apply to the claim he is bringing on appeal.

We acknowledge that some panels of this court have recently rejected exercising discretionary authority to consider similarly unpreserved claims. See, e.g., *State v.*

4

*Jelinek*, 66 Kan. App. 2d 158, 162-64, 577 P.3d 662 (2025), *petition for rev. filed* October 8, 2025. We exercise our discretion to address Escobar's claim for three reasons. First, we consider it important here that a case Escobar relies on for relief, *State v. Nunez*, 319 Kan. 351, 354, 554 P.3d 656 (2024), was decided after Escobar's sentencing and while this appeal was pending. Escobar could not have relied on the ruling in *Nunez* to support his claim in district court when *Nunez* had not been decided at the time Escobar was sentenced. Significantly, *Nunez* is an example of a case where the Kansas Supreme Court chose to address an *Apprendi* issue raised for the first time on appeal. If our Supreme Court chooses to address an unpreserved *Apprendi* claim similar to Escobar's for the first time on appeal, we find it appropriate to do the same.

Second, the district court incorrectly told Escobar at his plea hearing that his postrelease supervision term would be 36 months but then imposed lifetime postrelease supervision at the sentencing hearing. Although Escobar failed to object to his postrelease supervision term at the sentencing hearing, we deem it an unjustifiably harsh result to tell Escobar that we will not address his claim on appeal when the district court incorrectly advised him about his postrelease supervision term at the plea hearing. We do not perceive that Escobar intentionally has engaged in procedural posturing by benefiting from plea negotiations and then springing this issue for the first time on appeal. He is merely seeking the sentence the district court told him he would receive.

We acknowledge that Escobar could have moved to withdraw his plea when he learned at sentencing that he would be subject to lifetime postrelease supervision. But the burden at that point would have been on Escobar to convince the district court that a plea withdrawal was necessary to "correct manifest injustice." K.S.A. 22-3210(d)(2). Escobar should not have to move to withdraw his mediated no contest plea, which he otherwise might want to enforce, to seek relief from the district court's potential sentencing error. And to advise Escobar that he may seek relief by filing an ineffective assistance of counsel claim under K.S.A. 60-1507 would be an inefficient use of judicial resources.

5

Third, we observe that before our Supreme Court's ruling in *Nunez*, the Court of Appeals routinely addressed *Apprendi* claims for the first time on appeal because the issue involved purely a legal question arising on proved or admitted facts and because consideration of the theory was necessary to prevent the denial of fundamental rights. See, e.g., *State v. Conkling*, 63 Kan. App. 2d 841, 843, 540 P.3d 414 (2023); *State v. Entsminger*, No. 124,800, 2023 WL 2467058, at *6-8 (Kan. App. 2023) (unpublished opinion); *State v. Walker*, No. 125,554, 2023 WL 7983816, at *3-5 (Kan. App. 2023) (unpublished opinion); *State v. Reinert*, No. 123,341, 2022 WL 1051976, at *3 (Kan. App. 2022) ((unpublished opinion); *State v. Kewish*, No. 121,793, 2021 WL 4352531, at *3-4 (Kan. App. 2021) (unpublished opinion); *State v. Haynes*, No. 120,533, 2020 WL 741458, at *2-3 (Kan. App. 2020) (unpublished opinion); *State v. Schmeal*, No. 121,221, 2020 WL 3885631, at *8-9 (Kan. App. 2020) (unpublished opinion); *State v. Zapata*, No. 120,529, 2020 WL 741486, at *8-9 (Kan. App. 2020) (unpublished opinion); *State v. Cook*, No. 119,715, 2019 WL 3756188, at *1-3 (Kan. App. 2019) (unpublished opinion).

It was only *after* our Supreme Court's ruling in *Nunez* that some panels of this court have now decided it is more prudent to decline to reach the issue for the first time on appeal. See, e.g., *Jelinek*, 66 Kan. App. 2d at 162-64. Only recently did this court begin to find that "*Apprendi* claims related to sentence enhancements have been widely litigated in Kansas," so it is no longer necessary to reach the issue for the first time on appeal. *Jelinek*, 66 Kan. App. 2d at 164. But although *Apprendi* claims related to sentence enhancements have been widely litigated in Kansas, issues remain unsettled. Compare *State v. Lunsford*, No. 127,962, 2026 WL 972956, at *8 (Kan. App. 2026) (unpublished opinion) (finding *Apprendi* violation in guilty plea case reversible error), *petition for rev. filed* April 30, 2026; with *State v. Duckworth*, No. 126,677, 2024 WL 4579265, at *4-6 (Kan. App. 2024) (unpublished opinion) (finding *Apprendi* violation in no contest plea case harmless error), *rev. denied* 320 Kan. 864 (2025). As a result, we exercise our discretion to address Escobar's claim for the first time on appeal.

*Did the district court violate* Apprendi *by engaging in judicial fact-finding of Escobar's age?*

Turning to the merits of Escobar's claim, *Apprendi* holds that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. The Kansas Supreme Court has held that because postrelease supervision is considered part of the defendant's sentence, judicial fact-finding that increases the term of postrelease supervision beyond the statutory maximum implicates *Apprendi*. *Anthony*, 273 Kan. at 728-29. And our Supreme Court has explained that it is immaterial for *Apprendi* purposes whether the sentence-elevating provision is contained within the sentencing statutes or within the elements of the crime itself. *State v. Bello*, 289 Kan. 191, 198-99, 211 P.3d 139 (2009).

Under K.S.A. 22-3717(d)(1)(G)(i), the district court must impose lifetime postrelease supervision when the defendant is convicted of a sexually violent crime and was at least 18 years old when the crime was committed. If the defendant was under 18 years old when the crime was committed, the postrelease supervision term is 60 months. K.S.A. 22-3717(d)(1)(G)(ii). Aggravated indecent solicitation of a child is a sexually violent crime. K.S.A. 22-3717(d)(5)(G); K.S.A. 21-5508(b). Escobar claims the district court violated the rule in *Apprendi* by increasing his sentence to lifetime postrelease supervision without a jury finding that he was at least 18 years old when he committed his crime or without a knowing and voluntary waiver of that right.

In *Nunez*, our Supreme Court determined that the application of K.S.A. 22-3717(d)(1)(G)(i) requires a factual finding that the defendant was at least 18 years old when the sexually violent crime was committed. 319 Kan. at 355. The court recognized that admissions by the defendant may be relied upon as facts considered by the sentencing court. See, e.g., *Blakely v. Washington*, 542 U.S. 296, 303, 124 S. Ct. 2531,

159 L. Ed. 2d 403 (2004). But the *Nunez* court clarified that "before a sentencing court may rely on a defense admission to increase the defendant's sentence, that admission must have been *preceded* by a knowing and voluntary waiver of the defendant's jury trial right." (Emphasis added.) 319 Kan. at 354. The court added that "[i]f the jury trial right was not properly waived *with respect to any defense admission*, that admission may not be considered by a sentencing court without running afoul of *Apprendi*." (Emphasis added.) 319 Kan. at 354. Accord, *State v. Duncan*, 291 Kan. 467, 471-73, 243 P.3d 338 (2010), *overruled on other grounds by State v. Johnson*, 317 Kan. 458, 531 P.3d 1208 (2023) (general plea and jury trial waiver to charged crime did not effectively waive defendant's right to a jury for upward durational departure proceeding).

This result is consistent with how the United States Supreme Court has applied *Apprendi* to general pleas. *Erlinger v. United States*, 602 U.S. 821, 825-26, 833-35, 144 S. Ct. 1840, 219 L. Ed. 2d 451 (2024) (general plea to felon in unlawful possession of a firearm did not constitute a waiver of the sentence-elevating fact that three prior violent felonies were "committed on occasions different from one another"); *Blakely*, 542 U.S. at 298, 303-05 (general plea to kidnapping did not constitute a waiver of the sentence-elevating fact that the defendant acted with "deliberate cruelty"); *Apprendi*, 530 U.S. at 468-70, 490 (general plea to unlawful possession of a firearm did not constitute a waiver of the sentence-elevating fact that the crime was committed with a "biased purpose").

Returning to our facts, Escobar ultimately pleaded no contest to the amended charge of aggravated indecent solicitation of a child after waiving his right to have a jury trial on the charge. But his general plea to aggravated indecent solicitation of a child did not constitute a waiver of his constitutional right to have a jury determine the sentence-elevating age element. And even if Escobar's general plea and jury trial waiver on the elements of the charge was sufficient to waive his rights under *Apprendi*, Escobar made no age admissions after his jury trial waiver to support the extended postrelease

8

supervision term. Therefore, the statutory maximum postrelease supervision term for Escobar's conviction is 60 months. K.S.A. 22-3717(d)(1)(G)(ii).

The State points out in its brief that Escobar's year of birth was listed in the complaint. The State then argues that "when [Escobar] waived his right to a jury trial as part of the plea, he waived his right for the jury to find his age since it was listed in the complaint." But the complaint merely stated Escobar's year of birth underneath his name in the caption of the complaint. The language in the body of the complaint specifying the charges alleged that the victims were under 14 years of age, but the complaint did not allege that Escobar was 18 or older when the offenses were committed. Escobar's general plea and jury trial waiver to the amended charge was not sufficient to waive his rights under *Apprendi* to a jury finding on the sentence-elevating age element.

The State also points out that Escobar told the district court he was born in 1989 at his arraignment. But this admission at the arraignment hearing cannot be used to support a sentencing enhancement. *Nunez* makes clear that before a sentencing court may rely on a defense admission to increase the defendant's sentence, the admission must have been *preceded* by a knowing and voluntary waiver of the defendant's jury trial right. 319 Kan. at 354. Escobar did not waive his right to a jury trial until three months later at the plea hearing. Likewise, the fact that the district court informed Escobar at the arraignment that one of the potential penalties for the charged crimes was lifetime postrelease supervision is of no import. Escobar was arraigned on two counts of aggravated indecent liberties with a child but later plead no contest to an amended charge of aggravated indecent solicitation of a child. The district court told Escobar at the plea hearing that his postrelease supervision term for the amended charge would be 36 months.

The State also asserts in its brief that Escobar's counsel confirmed at the plea hearing that Escobar understood his postrelease supervision would be lifetime. This assertion is incorrect. Near the end of the plea hearing, the court service officer informed

9

the district court that Escobar's "registration period" would be "life," and Escobar's attorney stated, "That's what we thought, your Honor." The parties were discussing Escobar's registration requirements under the Kansas Offender Registration Act, K.S.A. 22-4901 et seq., not the duration of his postrelease supervision term. For these reasons, we find the district court erred when it imposed lifetime postrelease supervision.

*Was the district court's Apprendi violation harmless error?*

We next address whether the district court's sentencing error can be considered harmless. Escobar acknowledges that an *Apprendi* error can be harmless in some narrow circumstances. For instance, Escobar agrees that in the context of a jury trial, the omission of the defendant's age from the jury verdict may be harmless when the trial evidence leads to the conclusion beyond a reasonable doubt that the age element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error. But Escobar argues that an *Apprendi* error cannot be harmless in the context of a plea unless there is a statutory mechanism to remand the case for a jury trial on the sentence-elevating element.

Escobar cites *State v. Obregon*, 309 Kan. 1267, 1278, 444 P.3d 331 (2019), where the court dealt with a six-month "firearm enhancement," found by the district court, in violation of *Apprendi*. The Kansas Supreme Court found that the Legislature has not created a statutory exception to the general rule against special verdicts for a firearm enhancement to be determined after the verdict. *Obregon*, 309 Kan. at 1278. Thus, our Supreme Court vacated the sentence imposed in violation of *Apprendi*, and remanded for resentencing without the enhancement. *Obregon*, 309 Kan. at 1278. Escobar argues that *Obregon* controls the outcome of this appeal because the State cannot seek a remedy to have the case remanded for a jury trial on the sentence-elevating age element.

The State addresses harmless error in one paragraph of its brief and asserts that "nothing suggests Escobar would have taken a different course if an additional [jury trial] waiver had been required." The State cites *Duckworth*, 2024 WL 4579265, at *4-6, but includes no discussion of the case in its brief. In *Duckworth*, a panel of this court determined the appropriate harmless error test for an *Apprendi* violation is whether "the record suggests a reasonable possibility that the failure to inform Duckworth of his right to a jury trial on the issue of his age led to his decision to enter the plea." *Duckworth*, 2024 WL 4579265, at *5. The *Duckworth* panel adopted this test from *State v. Bentley*, 317 Kan. 222, 234, 526 P.3d 1060 (2023). The issue in *Bentley* was whether a jury trial waiver is required before a defendant stipulates to an element of a crime, and if so, whether any error can be harmless. 317 Kan. at 229-36.

The *Duckworth* panel reasoned that because Duckworth had validly waived a jury trial on the elements of the crimes, it could not "think of any reason" why he would insist on a jury trial on the issue of his age. 2024 WL 4579265, at *5. But as Escobar argues, because of the drastic consequences of lifetime postrelease supervision, there may be many reasons he might insist on his lawful right to a jury trial on the issue of his age unless he knowingly and voluntarily waived that right:

- lifetime postrelease supervision permanently deprives an individual of their constitutional rights to vote and serve as a juror. K.S.A. 21-6613(a), (b);
- lifetime postrelease supervision permanently deprives an individual of their constitutional right to bear arms. K.S.A. 21-6304(a)(2)(C);
- lifetime postrelease supervision permanently deprives an individual of their constitutional right to be free from unreasonable searches and subjects them to searches "at any time of the day or night, with or without a search warrant and with or without cause." K.S.A. 22-3717(m)(6);
- and most importantly, lifetime postrelease supervision permanently holds incarceration over the individual's head in the event they *ever* fail to comply

11

with any of the mandatory conditions of postrelease supervision. K.S.A. 22-3717(m)(1)-(7).

Until the Kansas Supreme Court departs from the *Obregon* remedy in a plea case, we find the *Bentley/Duckworth* harmless error test would not apply here, where Escobar received lifetime postrelease supervision for his conviction of a sexually violent crime without any admission to his age preceded by a knowing and voluntary jury trial waiver. And even if that test applied, we find the State has failed to meet its burden of showing the error here was harmless beyond a reasonable doubt. See *State v. Ward*, 292 Kan. 541, 568-69, 256 P.3d 801 (2011) (the party benefitting from the error bears the burden of proving harmlessness). We have no idea based on the record before us whether the district court's failure to inform Escobar of his right to a jury trial on the issue of his age led to his decision to plead no contest to the amended charge. As a result, we vacate the lifetime postrelease supervision term for Escobar's conviction of aggravated indecent solicitation of a child and remand for the district court to impose a 60-month term. See *Nunez*, 319 Kan. at 356-57 (clarifying correct postrelease supervision term under K.S.A. 22-3717[d][1][G][ii] is 60 months, not 36 months).

Is it frustrating to grant relief to Escobar when our record clearly shows he was over 18 years old when he committed his offense? Many may think so. But as the United States Supreme Court recently stated in a case correcting an *Apprendi* error:

> "There is no efficiency exception to the Fifth and Sixth Amendments. In a free society respectful of the individual, a criminal defendant enjoys the right to hold the government to the burden of proving its case beyond a reasonable doubt to a unanimous jury of his peers 'regardless of how overwhelmin[g]' the evidence may seem to a judge. [Citation omitted.]" *Erlinger*, 602 U.S. at 842.

*Is Escobar's lifetime postrelease supervision term an illegal sentence?*

As a separate issue, Escobar claims his lifetime postrelease supervision term is an illegal sentence. As a result, he argues that under K.S.A. 22-3504(a), this court may correct an illegal sentence "at any time while the defendant is serving such sentence." Whether a defendant is serving an illegal sentence is a question of law subject to unlimited review. *State v. Newman-Caddell*, 317 Kan. 251, 258-59, 527 P.3d 911 (2023). Although we need not address this issue because we are already granting Escobar the relief he is requesting, we summarily reject Escobar's claim.

Escobar argues that his lifetime postrelease supervision term is illegal because it violates K.S.A. 22-3717(d)(1)(G), but his illegal sentence claim is merely a constitutional *Apprendi* challenge in disguise. And the Kansas Supreme Court has held that K.S.A. 22-3504 does not cover a claim that a sentence is illegal because it violates a constitutional provision. *State v. Warrior*, 303 Kan. 1008, 1010, 368 P.3d 1111 (2016). As a result, we conclude Escobar's illegal sentence claim under K.S.A. 22-3504 fails.

Sentence vacated in part and case remanded with directions.

\* \* \*

ARNOLD-BURGER, J., dissenting:  I respectfully dissent. I do not believe we should address Christopher Bryant Escobar's claim for the first time on appeal for the reasons stated in *State v. Jelinek*, 66 Kan. App. 2d 158, 162-64, 577 P.3d 662 (2025), *petition for rev. filed* October 8, 2025, and those stated in Chief Judge Warner's dissent in *State v. Contreras*, 66 Kan. App. 2d 182, 193-95, 579 P.3d 1278 (2025), *rev. granted* 321 Kan. 791 (2026) (Warner, C.J., concurring in part and dissenting in part), which I will not detail but incorporate here.

First, the majority states that it does "not perceive that Escobar intentionally has engaged in procedural posturing by benefiting from plea negotiations and then springing this issue for the first time on appeal. He is merely seeking the sentence the district court told him he would receive." Slip op. at 5. It is unclear the facts upon which this perception is based.

To the contrary, Escobar provides no reason for not raising the issue of lifetime supervision at sentencing, *even though* he was told at his plea hearing that his term of postrelease supervision would be 36 months. I find it hard to believe that this discrepancy went unnoticed. Instead, at that point in the sentencing hearing, the judge should have been notified by counsel of the error, and thus either given Escobar an opportunity to withdraw his plea or given the judge an opportunity to correct his alleged misstatement. See *State v. Marinelli*, 307 Kan. 768, 791, 415 P.3d 405 (2018) (finding it significant that defendant was given opportunity to withdraw his plea when it was brought to court's attention that it had not made a Kansas Offender Registration Act registration order at the time of conviction).

The majority goes so far as to say that any motion to withdraw his plea would require Escobar to show manifest injustice, give up the benefits of the mediated plea agreement—which he otherwise could seek to enforce—and then seek relief from the court's sentencing error. Slip op. at 5. Therefore, he should not be held to that remedy. But that was his remedy. He chose not to pursue it, but to instead ask this court to hear this issue anew with no opportunity for the State to present contrary evidence or the district court to justify or correct its actions.

Moreover, it is equally as likely that he did not raise this issue at sentencing because there was no discrepancy. Any perception that he was to get 36 months of postrelease supervision was corrected at the end of plea hearing, well before sentencing. As the majority points out "[n]ear the end of the plea hearing, the court services officer

14

informed the district court that Escobar's 'registration period' would be 'life,' and Escobar's attorney stated, 'That's what we thought, your Honor.'" Slip op. at 3. So Escobar's attorney agreed at the plea hearing that Escobar's registration requirement was lifetime, which should have prompted a contemplation of the applicable postrelease supervision period requirement as well. If Escobar believes he had ineffective assistance of counsel, due to counsel's failure to recognize (1) the lifetime postrelease supervision announced at sentencing was not the 36 months stated during the plea hearing, and (2) was also an *Apprendi* violation because there had been no jury finding or jury waiver of his age, Escobar may seek a remedy under K.S.A. 60-1507. If counsel was ineffective, Escobar will have an opportunity to have the issue considered by the district court when all the information is properly before it.

Finally, the majority suggests that requiring Escobar to file an action under K.S.A. 60-1507 "would be an inefficient use of judicial resources." Slip op. at 5. I submit that the inefficient use of judicial resources is asking this court to consider an issue for the first time on appeal when counsel is not able to provide any reason it was not raised below, and the defendant has other remedies which will give both parties the opportunity to fully address the alleged error.

I would affirm the district court decision in this case.

15